**Deborah J. SWENSON, Plaintiff,**

v.

**CDI CORPORATION, Management Recruiters International, Inc., and David Marth, Defendants.**

**No. 3–87 CIV 221.**

United States District Court, D. Minnesota, Third Division.

Oct. 7, 1987.

Donald Goldman, Cleveland, Ohio, Robert Stich, of Lasley, Gaughan, Stich & Angell, Minneapolis, Minn., for defendants.

Douglas Hedin, Minneapolis, Minn., for plaintiff.

## ORDER

ALSOP, Chief Judge.

The above-entitled matter comes before the court upon the motion of defendant CDI Corporation ("CDI"), Management Recruiters International, Inc. ("MRI"), and David Marth, to stay proceedings pursuant to 9 U.S.C. § 3.

### I. BACKGROUND.

The facts material to this motion are not in dispute. Plaintiff was a managerial employee of MRI. CDI is the parent corporation of MRI. David Marth is also a managerial employee of MRI, and acted in a supervisor capacity towards the plaintiff.

Plaintiff and MRI entered into a Manager's Employment Agreement which contained the following arbitration clause:

Except as provided in Subsection 10(b) hereof, all controversies, claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, or the relations between the parties, shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ... The award rendered by the arbitrator shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof, including a federal district court, pursuant to the Federal Arbitration Act.

In her complaint, plaintiff asserts seven claims for relief, three of which the plaintiff concedes are subject to arbitration. (Count III-defamation, Count IV-intentional

infliction of emotional distress, and Count V-negligent hiring and supervision.) The parties disagree, however, as to the arbitrability of the remaining counts of the complaint.

## II. DISCUSSION.

The Federal Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Several recent Supreme Court cases provide an analytical framework for determining the arbitrability of plaintiff's remaining claims for relief. Specifically, in *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1984), the Court stated that the "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." [1] *Id.* at 626, 105 S.Ct. at 3354. Next, if the dispute involves statutory rights, the court should consider whether Congress intended "to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 628, 105 S.Ct. at 3355.

### A. *Agreement to Arbitrate.*

■ The plaintiff argues that Counts VI (negligence/conversion) and VII (invasion of privacy) fall outside the scope of the arbitration clause because the acts giving rise to the claims occurred after the plaintiff's termination. Both claims relate to the actions of unnamed employees of CDI and MRI who allegedly opened plaintiff's personal mail subsequent to her termination. The letters were addressed to the plaintiff and mailed to the plaintiff's former business address.

Whether the parties agreed to arbitrate is determined by applying "federal substantive law of arbitrability ..." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). That body of law counsels:

> That questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration ... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941.

Although the issue is far from being one-sided, given the presumption in favor of arbitrability, the court is satisfied that plaintiff's claims arising from the opening of the plaintiff's mail are claims that arose out of her employment as a manager and are within the parameters of the arbitration clause at issue. *See Aspero v. Shearson American Express,* 768 F.2d 106, 109 (6th Cir.1985).

■ The final two claims asserted by the plaintiff, Count I-sexual discrimination in violation of the Minnesota Human Rights Act and Count II-race discrimination in violation of the Minnesota Human Rights Act, are clearly within the scope of the arbitration clause.[2]

### B. *Congressional Intent to Preclude Waiver of Judicial Remedies of Statutory Rights.*

■ The plaintiff argues that Congress intended to preclude waiver of the judicial

---

1. It should be noted that defendants are not requesting the court to compel arbitration pursuant to Section 4, but rather to stay the proceedings pursuant to Section 3. Notwithstanding the distinction mentioned above, the substantive determination of arbitrability is the same under Sections 3 and 4.

2. Plaintiff's argument that because the employment contract did not expressly prohibit the defendants from discriminating against the

plaintiff the parties did not intend to arbitrate this type of dispute is contrary to the case law. The Supreme Court, in several recently decided cases, has required arbitration of state and federal *statutory* claims. *See, e.g., Perry v. Thomas,* — U.S. ——, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (California Labor Code); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (California Franchise Investment Law).

remedies provided for in the Minnesota Human Rights Act. In support of her argument, plaintiff relies exclusively on language in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander*, the Court determined that an employee does not surrender his right to litigate a Title VII action by unsuccessfully arbitrating the underlying dispute pursuant to a collective bargaining grievance procedure. The Supreme Court reasoned that "[t]he purpose and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of the Title VII; deferral to arbitral decisions would be inconsistent with that goal." *Id.* at 56, 94 S.Ct. at 1023.

The Arbitration Act, like any statutory directive, may be overridden by a contrary congressional command. *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). The congressional command can be in the form of expressed statutory language, legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes.[3] *Id.*

■ Defendants argue that because plaintiff is relying on state as opposed to federal discrimination laws, it is theoretically impossible for Congress to have intended to preclude waiver of judicial remedies provided for in the Minnesota Human Rights Act. Defendants' argument is not without some judicial support. *See Steck v. Smith Barney, Harris Upham & Co., Inc.*, 661 F.Supp. 543, 548 (D.N.J.1987). The court, however, disagrees.

It is not inconceivable that Congress, through the express language of a federal statute or the supporting legislative history, could articulate an intent to preclude waiver of judicial remedies not only for violations of federal statutory rights but also for violation of similar state statutory rights, thereby exempting these particular state statutes from the provisions of the Federal Arbitration Act. The question remains, however, whether Congress expressed such an intent when enacting the federal discrimination laws.

Plaintiff refers the court's attention to *Alexander*, where the Supreme Court states that "[m]oreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes."

Although the language provides colorable support for the proposition that the Supreme Court believes Congress may have intended to preclude waiver of judicial remedies provided for in state discrimination statutes, the proposition is clearly dictum and more important, it is against the tide of recent Supreme Court decisions confronting the arbitrability of statutory claims. *See, e.g., McMahon*, 107 S.Ct. 2332 (claims under § 10(b) of the SEA and RICO are arbitrable); *Mitsubishi*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (claims under federal antitrust laws are arbitrable); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (Court rejected doctrine of intertwining). Given the previously cited and other recently decided Supreme Court cases, the court believes that the Supreme Court would conclude that Congress did not intend to preclude waiver of judicial remedies provided for in state discrimination statutes.

Based upon the record as presently constituted, and the foregoing discussion,

IT IS ORDERED That defendants' motion to stay proceedings is granted.

IT IS FURTHER ORDERED That this action is stayed pending completion of arbitration of all issues here pending between the parties.

---

**3.** Plaintiff's argument that the non-waiver provision of the state statute is sufficient to preclude waiver was recently rejected by the Supreme Court. *Keating*, 465 U.S. at 10, 104 S.Ct. at 858.