Deborah J. SWENSON, Appellant,

v.

MANAGEMENT RECRUITERS
INTERNATIONAL, INC.;
David Marth, Appellees.

State of Minnesota, amicus
curiae/Appellant.

No. 87–5465.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1988.

Decided Oct. 5, 1988.

Douglas A. Hedin, Minneapolis, Minn., for appellant.

Donald L. Goldman, Cleveland, Ohio, for appellees.

Before LAY, Chief Judge, BROWN,[*] Senior Circuit Judge, and BEAM, Circuit Judge.

LAY, Chief Judge.

Swenson commenced an action against her former employer, Management Recruiters International, Inc., and her former supervisor, David Marth, alleging sex discrimination, aiding and abetting race discrimination pursuant to the Minnesota Human Rights Act,[1] invasion of privacy and tortious conversion of the contents of her mail. Management Recruiters removed the case to federal court on grounds of diversi-

---

[*] The HONORABLE JOHN R. BROWN, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. Minn.Stat. §§ 363.01–363.14 (1986 & Supp. 1987).

ty of citizenship under 28 U.S.C. § 1331 (1982) and moved to stay this suit pending arbitration of all issues pursuant to the Federal Arbitration Act (FAA). 9 U.S.C. § 3 (1982).[2] The district court[3] granted the motion to stay. 670 F.Supp. 1438. On appeal, Swenson contends that the district court erred in finding that the FAA preempts state judicial remedies and in finding that the claims are subject to arbitration. We now reverse in part and affirm in part.

Management Recruiters International, Inc. does business in Minnesota as Office-Mates 5. Swenson was employed as an office manager at OfficeMates 5 in Edina, Minnesota, from August 12, 1985, until February 13, 1987, when she terminated her employment. She filed a discrimination suit making claims of sex discrimination and unfair employment practices in violation of Minnesota law. Swenson also alleges that Marth attempted to compel or coerce her to engage in racial discrimination in hiring practices, constituting an unfair employment practice in violation of Minn.Stat. § 363.03 subd. 6(2) (1986).

On February 13, 1987, Swenson voluntarily quit her job allegedly because of the discriminatory actions of her employer. After Swenson quit her job, she claims that employees of Management Recruiters opened her personal, sealed mail in violation of Minn.Stat. § 609.795 (1986 & Supp. 1987). After Swenson terminated her employment, she filed suit in Hennepin County District Court. The suit was removed to federal court, and the district court issued an order to stay all issues subject to arbitration. Swenson now appeals.

Preemption

■ In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the district court had held that the employee's statutory right to a trial de novo under Title VII was foreclosed by the employee's voluntary submission of his claim to final arbitration pursuant to the union's agreement to arbitrate. The court of appeals affirmed. The Supreme Court in reversing, was "unable to accept the proposition that petitioner waived his cause of action under Title VII." *Id.* at 51, 94 S.Ct. at 1021. The Court unanimously declared:

> we think it clear that there can be no prospective waiver of an employee's rights under Title VII. * * * Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver.

*Id.* at 51–52, 94 S.Ct. at 1021–22. While the *Alexander* Court noted that federal policy favors arbitration, *id.* at 46, 94 S.Ct. at 1018, it recognized that the Title VII scheme indicates that Congress intended federal courts to be ultimately responsible for enforcing Title VII, and deferral to arbitral decisions would conflict with that goal. *Id.* at 56, 94 S.Ct. at 1023. The Court also observed that "the choice of forums inevitably affects the scope of the substantive right to be vindicated." *Id.* (citing *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 359–60, 91 S.Ct. 409, 413–14, 27 L.Ed.2d 456 (1971) (Harlan, J., concurring)). The *Alexander* Court concluded: "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." 415 U.S. at 59–60, 94 S.Ct. at 1025–26.

2. Swenson signed an agreement with her employer containing a provision requiring arbitration of controversies between the parties pursuant to the Commercial Arbitration Rules of the American Arbitration Association.

3. The Honorable Donald D. Alsop, United States Chief District Judge for the District of Minnesota.

Although *Alexander* involves a collective bargaining agreement, and not a commercial arbitration agreement under the FAA, this fact should not change the Court's analysis. The *Alexander* Court was well aware that federal policy favors arbitration. That decision turned not on the fact that a collective bargaining arbitration was involved, but instead on the unique nature of Title VII. *Alexander* noted that "Congress indicated that it considered the policy against discrimination to be of the 'highest priority.'" *Id.* at 47, 94 S.Ct. at 1019.

Subsequent to the *Alexander* decision, the Supreme Court again recognized that certain statutes which provide minimum substantive guarantees, such as Title VII, are to be treated differently for arbitration purposes. In *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court held that wage claims brought under the Fair Labor Standards Act are not barred by the prior submission of those claims to the contractual dispute-resolution procedures. The Court noted that "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, *different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual*

*workers." Id.* at 737, 101 S.Ct. at 1443 (our emphasis). The *Barrentine* Court went on to state "[t]hese considerations were the basis for our decision in *Alexander v. Gardner–Denver Co.," Id.* (cite omitted).[4] Discrimination and civil rights legislation have traditionally been viewed differently than purely private economic disputes. R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance and Procedure §§ 15.4 & 15.7 (1986).

Management Recruiters argues that the federal policy favoring arbitration should prevail. It relies on recent Supreme Court decisions in which the FAA was found to preempt both state and federal remedies. However, none of these cases have involved employment discrimination claims.[5]

The analysis of *Alexander* lends strong support that Congress did not intend federal judicial proceedings in discrimination cases to be preempted by employment arbitration agreements enforceable under the FAA. The Court pointed up an inherent conflict between arbitration and the underlying purposes of Title VII which evince a congressional intent to prohibit waiver of judicial forums. In *Alexander* the Supreme Court expressly commented why arbitration is poorly suited as a forum for the final resolution of rights created by Title VII. The main problems with arbitration are the lack of expertise of arbitrators,[6] the

---

**4.** Management Recruiters contends that *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) would appear to limit the effect of *Barrentine* and *Alexander.* The Third Circuit has rejected the proposition that *Mitsubishi* limits the effect of *Barrentine* and *Alexander. Gavalik v. Continental Can Co.,* 812 F.2d 834 (3d Cir. 1987). The Third Circuit held that as long as a judicial determination of arbitrability is the result of an independent interpretation of the congressional intent, it will not contravene *Mitsubishi. Id.* at 850 & n. 30.

**5.** *Perry v. Thomas,* — U.S. —, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (claim for wages under the California Labor Code must be arbitrated, despite California statute which invalidated arbitration agreements in wage collection cases); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claims under § 10(b) of the Securities Exchange Act and RICO claims were arbitrable

under predispute arbitration agreements); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (federal anti-trust claims must be arbitrated under an arbitration agreement involving international transaction); *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (state law claims, pendent to non-arbitrable federal securities claims, must be arbitrated; court rejected "intertwining" doctrine); *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (claims asserted under California Franchise Investment Law were arbitrable, despite California law invalidating arbitration clause).

**6.** *Alexander* noted that many arbitrators are not lawyers, and many of them may not possess the knowledge to resolve the complex legal questions that might arise under the antidiscrimination statutes. 415 U.S. at 57 n. 18, 94 S.Ct. at 1024 n.18. Arbitrators may be ill-equipped to handle questions of law such as the proper

inferior factfinding process,[7] and the inability of arbitration to judicially construe Title VII by reference to public law concepts. *Alexander*, 415 U.S. at 56–57, 94 S.Ct. at 1023–24. *See also McDonald v. City of West Branch*, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984) (lack of expertise cited as reason not to defer to arbitration in section 1983 case); *Barrentine*, 450 U.S. at 743, 101 S.Ct. at 1446 (lack of competence to decide legal issue cited as reason not to defer to arbitration in Fair Labor Standards Act case).

Management Recruiters argues that the Supreme Court has recently rejected the idea that the competence of arbitrators is inadequate to decide statutory claims. The Court in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), observed "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id.* at 626–27, 105 S.Ct. at 3353–54. The Court rejected arguments of inadequacy based on complexity of the claim, inadequate procedures, and fear that arbitrators will not follow the statute and fail to protect substantive rights. *Id.* at 634–36, 105 S.Ct. at 3357–59. *See also Shearson*, 482 U.S. ——, 107 S.Ct. at 2340–44.

Arguably, *Mitsubishi* mandates that it is the intent found in the text of the statute, and not the conclusions of the court regarding the adequacy of arbitration which is determinative. However, *Mitsubishi* went on to note, "[t]hat is not to say that all controversies implicating statutory rights are suitable for arbitration. * * * [I]t is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable." *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. at 3354.

We conclude that in the passage of Title VII it was the congressional intent that arbitration is unable to pay sufficient attention to the transcendent public interest in the enforcement of Title VII. Title VII mandates the promotion of the public interest by assisting victims of discrimination. The arbitration process may hinder efforts to carry out this mandate.

### State antidiscrimination laws

■ Having concluded that arbitration under the FAA was not intended to supersede federal judicial remedies under Title VII we turn to the discussion as to whether the same principles should apply to state remedies serving as a counterpart to Title VII.

*Alexander* recognized that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander*, 415 U.S. at 48–49, 94 S.Ct. at 1019–20. Title VII contemplates substantial involvement of state procedures in the implementation of employment discrimination claims. Title VII provides for initial consideration of claims in state and local forums, and the EEOC may not process a charge of discrimination until the state remedy has been invoked and 60 days have passed, or until state proceedings have terminated.[8] *See also* 42 U.S.C. § 2000e–5(b) (1982).

---

burden of proof or the appropriate legal standard to apply. *Id.; see also McDonald v. City of West Branch*, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984).

7. The *Alexander* Court explained:
   [t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable. * * * And as this Court has recognized, "[a]rbitrators have no obligation

to the court to give their reasons for an award."
415 U.S. at 57–58, 94 S.Ct. at 1024–25 (citations omitted); *see also McDonald*, 466 U.S. at 291, 104 S.Ct. at 1803.

8. 42 U.S.C. § 2000e–5(c) (1982):
   In the case of an alleged unlawful employment practice occurring in a State, * * * which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with

Two sections of the Civil Rights Act of 1964 make clear the importance of state law and congressional intent to preempt only those laws which actually conflict with federal law. Section 2000e–7 of 42 U.S.C. provides:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

Section 2000h–4 of 42 U.S.C., which applies to all titles of the Civil Rights Act, provides the standard for preemption:

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.

These sections demonstrate the central role state law is to play in the Title VII scheme.

In *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court held that in Title VII cases, federal courts are required to give res judicata effect to state court decisions in state law discrimination cases. Kremer filed an employment discrimination charge with the EEOC under Title VII. The EEOC, as mandated by Title VII,[9] referred the claim to the state agency charged with enforcing state antidiscrimination law. The state agency determined the claim to be without merit and was upheld by an administrative appeal board.[10] Kremer filed a petition with the state appellate court and the court affirmed. Subsequently, the EEOC determined that there was no reasonable cause to believe the charge was true and issued a right-to-sue notice. Kremer then filed a suit in federal court, which was dismissed on res judicata grounds.

In affirming the dismissal the Supreme Court focused on the important role of state law in enforcing the Title VII scheme, as evidenced in the legislative history. The legislative history of Title VII evinces a congressional intent to allow individuals to pursue independently one's rights under other applicable state and federal statutes.[11] Provisions in the text as well as in the legislative history demonstrate an explicit, mixed federal-state scheme of Title VII and a prominent state law role.

*Alexander* makes clear that Congress intended the right in employment discrimination cases to have access to judicial rem-

respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated * * *.

**9.** 42 U.S.C. § 2000e–5(c) (1982).

**10.** In *Kremer,* the Court found that the problems with the arbitral factfinding "cannot be attributed to state administrative boards and state courts. State authorities are charged with enforcing laws, and state courts are presumed competent to interpret those laws." *Id.* at 478, 102 S.Ct. at 1896.

**11.** Senator Hubert Humphrey, the Senate floor manager for the bill, remarked on the relationship between Title VII and existing state statutes:

We recognized that many States already have functioning antidiscrimination programs to insure equal access to places of public accommodation and equal employment opportunity. We sought merely to guarantee that these States—and other States which may establish such programs—will be given every opportunity to employ their expertise and experience without premature interference by the Federal Government.

110 Cong.Rec. 12,725 (1964). In an interpretive memorandum, Senators Clark and Case echoed Humphrey's remarks: "Title VII specifically provides for the continued effectiveness of State and local laws and procedures for dealing with discrimination in employment" and that "[Title VII] will not override any State law or municipal ordinance which is not inconsistent." *Id.* at 7214, 7216.

edies to outbalance the federal policy favoring arbitration. It is equally clear, from the text and legislative history of Title VII and from *Kremer*, that Congress intended the federal antidiscrimination system to defer to state systems where possible. Under the Minnesota Human Rights Act, the Department of Human Rights may investigate charges, Minn.Stat. § 363.06 (1986), and represent victims in administrative and judicial proceedings. Minn.Stat. §§ 363.-071–.072 (1986). By giving individuals access to the state courts, the private litigant "not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices." *Alexander*, 415 U.S. at 45, 94 S.Ct. at 1018. As the Court stated, "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." *Id.* at 57, 94 S.Ct. at 1024.

We conclude that Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel state statutory rights, thereby exempting state statutes from the provisions of the Federal Arbitration Act. We emphasize that we reach this holding based upon the legislative history and congressional intent manifested by Congress in passing Title VII. The intent of the state legislature in passing the Minnesota Human Rights Act, Minn.Stat. §§ 363.01—363.14 (1986 & Supp. 1987), is not relevant to our holding. *Cf. Steck v. Smith Barney, Harris Upham & Co.*, 661 F.Supp. 543 (D.N.J. 1987).[12]

**Swenson's claims arising out of opening of Swenson's mail are arbitrable**

■ Swenson appeals from the district court's stay of Counts VI and VII of her complaint pursuant to the FAA. These counts are based upon alleged acts by the defendants which took place after Swenson had terminated her employment. Swenson argues that the parties' employment agree-

---

12. We note a New Jersey federal district court has examined the question whether a state law Age Discrimination in Employment Act (ADEA) claim was subject to arbitration vis-a-vis a state judicial proceeding. In finding as we do that *Alexander* is still viable after *Mitsubishi* and Title VII claims in federal court preempt arbitration, the court reasoned that plaintiff's state law claims, however, did not enjoy the same protection. The court relied on *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), which held that arbitration is necessary "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1240. The court also relied on the statement from *Byrd* that "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 221, 105 S.Ct. at 1242 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

In so holding the court reasoned that an ADEA claim was parallel to a Title VII claim, citing New Jersey authority to that effect. *Steck*, 661 F.Supp. at 548. However, the court concluded that the age discrimination statute involved was state and not federal, and there was no congressional intent involved, so the FAA must be strictly enforced. *Id.*

We find that Congress, in passing Title VII as it deals with race and gender discrimination claims, manifested the intent to exempt both state and federal law from arbitration. The ADEA is not part of Title VII, and although aimed at a form of discrimination, the ADEA does not contain the same recognition of state procedural remedies as does Title VII in dealing with race and gender discrimination claims. In fact, this court has found that the ADEA is more like 42 U.S.C. § 1983 than Title VII, *Stillians v. State of Iowa*, 843 F.2d 276 (8th Cir.1988) (Lay, C.J., dissenting) (holding that under the ADEA, unlike Title VII, a final, unreviewed, state administrative proceeding has preclusive effect in federal court). Suffice it to say there are many substantive and procedural differences in the provisions of Title VII and the ADEA. Title VII makes clear state procedures must be invoked as a prerequisite to a filing of a Title VII claim. The ADEA does not have a similar requirement. Under the ADEA, 29 U.S.C. § 633(a) (1982), it is provided that "upon commencement of action under this chapter such action shall supersede any State action" whereas Title VII contains no such limitation. Compelling arbitration in race and gender discrimination cases as a preemptive forum to state enforced claims runs contra to the intended scheme Congress has provided in Title VII. The congressional scheme recognizes both the state agencies and courts having an integral role in enforcement of Title VII claims.

ment had ended and that an arbitrator could decide only issues which arose during the time the employment agreement was in effect.

The duty to arbitrate is contractual. Only those issues which parties have agreed to arbitrate may be submitted to arbitration. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984) (Arbitration is a matter of contract interpretation). This court must first look to the language of the agreement to determine whether the parties intended this dispute to be arbitrated. *Id.* If the contract language is ambiguous or unclear, federal policy requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)).

The employment agreement provides for arbitration of "all controversies, claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, or the relations between the parties."[13] The district court found that given the policy favoring arbitration and the breadth of the arbitration agreement, these claims arose out of Swenson's employment as a manager, and were within the parameters of the arbitration clause. *Swenson v. CDI Corp.*, 670 F.Supp. 1438, 1440 (D.Minn.1987). We find no error in this interpretation. We affirm the district court's decision as to the arbitrability of Counts VI and VII.

Accordingly, we reverse in part and affirm in part the judgment of the district court.

13. Manager's Employment Agreement dated August 12, 1985, Appendix at 35.