**Ann Aline JACOBSEN, Plaintiff,**

v.

**ITT FINANCIAL SERVICES CORPORATION, Defendant.**

No. CIV–1–90–287.

E.D. Tennessee, S.D.

March 25, 1991.

Harry F. Burnette, Brown, Dobson, Burnette & Kesler, Chattanooga, Tenn., for plaintiff.

Christopher H. Steger, Miller & Martin, Chattanooga, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

The matter before the Court is a motion by defendant to stay these judicial proceedings pending the outcome of arbitration. After carefully reviewing the record and the applicable law, the Court concludes that plaintiff is not required to submit her claims to arbitration and the defendant's motion shall be DENIED.

Plaintiff has invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff brings her cause of action under Tenn.Code Ann. §§ 4-21-101 *et seq.*, to obtain injunctive relief and recover compensatory damages for alleged sex discrimination and sexual harassment in her employment.[1]

Defendant is a Delaware corporation which provides management services for consumer loan transactions through a nationwide network of offices. These management services include receiving and processing loan transactions, closing loan transactions, and collecting and remitting loan payments. Defendant is not itself a lender but, rather, it manages and services loans made by Aetna Finance Company.

Plaintiff was employed as a manager trainee by defendant at its Chattanooga, Tennessee, office from July 26, 1989, until her termination on January 12, 1990. Plaintiff alleges that she was sexually harassed by her male supervisor, subjected to sexual discrimination, and discharged from employment when she rejected the supervisor's sexual advances.

Plaintiff signed two employment agreements with defendant which provided in part:

ITT CFC and EMPLOYEE agree that any dispute between them or claim by either against the other or any agent or affiliate of the other shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum, 2124 Dupont Avenue South, Minneapolis, MN, and that judgment upon the award may be entered in any court of competent jurisdiction.

The question to be resolved is whether plaintiff may pursue a lawsuit in this Court for sex discrimination and sexual harassment under Tenn.Code Ann. §§ 4-21-101 *et seq.*, or is she required to submit her claim

---

1. Plaintiff has not asserted a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* ("Title VII").

to binding arbitration. Defendant argues that the arbitration provision in the employment agreements is valid and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and the Tennessee Uniform Arbitration Act, Tenn.Code Ann. §§ 29–5–301 *et seq.*

The Supreme Court has strongly endorsed arbitration as an effective, efficient means of dispute resolution. *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185, *reh. denied,* 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). These cases hold that the Federal Arbitration Act establishes a federal policy favoring arbitration and federal courts are required to rigorously enforce arbitration agreements. In *McMahon,* 482 U.S. at 225–27, 107 S.Ct. at 2337–38, the Court ruled that the duty to enforce arbitration agreements is not necessarily diminished when a party raises a claim based upon a legal right created by statute.

> The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rites at issue.... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," ... or from an inherent conflict between arbitration and the statute's underlying purposes." ... (citations omitted).

*Id.*

■ In the case *sub judice*, the Court is persuaded that plaintiff has met her burden of showing that Congress intended to preclude a prospective waiver of her judicial remedies for claims of sex discrimination and sexual harassment predicated upon Tenn.Code Ann. §§ 4–21–101 *et seq.* In *Alexander v. Gardner–Denver, Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that, despite a collective bargaining agreement to arbitrate all disputes, an employee could not prospectively waive his or her right to a judicial forum on a racial discrimination in employment claim brought under Title VII. Although the Court in *Alexander* did not specifically address the Federal Arbitration Act, it did acknowledge the existence of a strong federal policy in favor of arbitration. The Court determined, however, that the statutory scheme and legislative history of Title VII establish that Congress intended to preclude the prospective waiver of a judicial forum through arbitration. Although an employee may make an individual decision as part of a voluntary settlement to waive a cause of action under Title VII, the employee's waiver or consent to the settlement must be voluntary and knowing. *Id.* at 52 n. 15, 94 S.Ct. at 1021 n. 15.

In its more recent decisions rendered subsequent to *Alexander,* the Supreme Court has developed a strong presumption in favor of arbitrability of commercial claims under the Federal Arbitration Act. *Rodriguez,* 490 U.S. 477, 109 S.Ct. 1917; *Shearson/American Express,* 482 U.S. 220, 107 S.Ct. 2332; *Mitsubishi,* 473 U.S. 614, 105 S.Ct. 3346. Notwithstanding these recent decisions, the Supreme Court has done nothing to disturb its clear holding in *Alexander* that arbitration agreements do not constitute a prospective waiver which precludes an independent right of access to a judicial forum for the adjudication of Title VII claims. *Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104 (5th Cir.1990); *Utley v. Goldman Sachs & Co.,* 883 F.2d 184, 186 (1st Cir.1989), *cert. denied,* ― U.S. ―, 110 S.Ct. 842, 107 L.Ed.2d 836. The fact that plaintiff in the case *sub judice* signed a private, individual contract of employment rather than a collective bargaining agreement as in *Alexan-*

*der* is immaterial. *Alford,* 905 F.2d at 107; *Utley,* 883 F.2d at 187; *Swenson v. Management Recruiters Intern., Inc.,* 858 F.2d 1304, 1306 (8th Cir.1988), *reh'g denied,* 872 F.2d 264, *cert. denied,* — U.S. ——, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989).

The parties have cited and discussed various cases concerning the application of the Federal Arbitration Act to claims brought by employees alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Plaintiff, for example, cites *Nicholson v. CPC International,* 877 F.2d 221 (3d Cir.1989).[2] These ADEA cases are inapposite to the case at bar. The *Alexander* decision involved a determination of Congressional intent concerning only Title VII. ADEA is not a part of Title VII. *See Nicholson,* 877 F.2d at 225–226. Each statutory scheme requires its own discrete analysis.

Having concluded that arbitration under the Federal Arbitration Act does not supersede federal judicial remedies available to aggrieved employees asserting claims of discrimination under Title VII, the Court turns to the question of whether the same legal principles should apply to the Tennessee Human Rights Act, Tenn.Code Ann. §§ 4–21–101 *et seq.,* which serves as a counterpart at the state level to Title VII. Section 4–21–101 provides in part:

(a) It is the purpose and intent of the general assembly by this chapter:

(1) To provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968, and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended;

(2) To assure that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations, and housing sufficient to justify the deferral of cases by the federal equal employment opportunity commission, the department of housing and urban development, the secretary

of labor, and the department of justice under those statutes; ....

In *Swenson,* the Eighth Circuit considered the question of whether the Federal Arbitration Act preempted state judicial remedies under the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–363.14. Swenson brought a cause of action against her former employer and former supervisor alleging, *inter alia,* sex discrimination in violation of the Minnesota Human Rights Act. The district court stayed the judicial proceedings pending arbitration of all issues pursuant to the Federal Arbitration Act. The Court of Appeals for the Eighth Circuit reversed.

*Alexander* recognized that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander,* 415 U.S. at 48–49, 94 S.Ct. at 1019–20. Title VII contemplates substantial involvement of state procedures in the implementation of employment discrimination claims. Title VII provides for initial consideration of claims in state and local forums, and the EEOC may not process a charge of discrimination until the state remedy has been invoked and 60 days have passed, or until state proceedings have terminated.[ ] *See also* 42 U.S.C. § 2000e–5(b) (1982).

Two sections of the Civil Rights Act of 1964 make clear the importance of state law and congressional intent to preempt only those laws which actually conflict with federal law. Section 2000e–7 of 42 U.S.C. provides:

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

---

**2.** The United States Supreme Court heard oral arguments on January 14, 1991, on the question of whether ADEA claims are subject to compulsory arbitration where an employee, upon being initially hired, signed an agreement to arbitrate any disputes or claims against his employer. *Gilmer v. Interstate/Johnson Lane Corp.,* 59 U.S. L.W. 1120 (U.S. Feb. 5, 1991) (No. 90–18).

Section 2000h–4 of 42 U.S.C., which applies to all titles of the Civil Rights Act, provides the standard for preemption:

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.

These sections demonstrate the central role state law is to play in the Title VII scheme.

In *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court held that in Title VII cases, federal courts are required to give res judicata effect to state court decisions in state law discrimination cases. Kremer filed an employment discrimination charge with the EEOC under Title VII. The EEOC, as mandated by Title VII,[ ] referred the claim to the state agency charged with enforcing state antidiscrimination law. The state agency determined the claim to be without merit and was upheld by an administrative appeal board.[ ] Kremer filed a petition with the state appellate court and the court affirmed. Subsequently, the EEOC determined that there was no reasonable cause to believe the charge was true and issued a right-to-sue notice. Kremer then filed a suit in federal court, which was dismissed on res judicata grounds.

In affirming the dismissal the Supreme Court focused on the important role of state law in enforcing the Title VII scheme, as evidenced in the legislative history. The legislative history of Title VII evinces a congressional intent to allow individuals to pursue independently one's rights under other applicable state and federal statutes.[ ] Provisions in the text as well as in the legislative history demonstrate an explicit, mixed federal-state scheme of Title VII and a prominent state law role.

*Alexander* makes clear that Congress intended the right in employment discrimination cases to have access to judicial remedies to outbalance the federal policy favoring arbitration. It is equally clear, from the text and legislative history of Title VII and from *Kremer,* that Congress intended the federal antidiscrimination system to defer to state systems where possible. Under the Minnesota Human Rights Act, the Department of Human Rights may investigate charges, Minn.Stat. § 363.06 (1986), and represent victims in administrative and judicial proceedings. Minn.Stat. §§ 363.-071–.072 (1986). By giving individuals access to the state courts, the private litigant "not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices." *Alexander,* 415 U.S. at 45, 94 S.Ct. at 1018. As the Court stated, "the resolution of statutory or constitutional issues is a primary responsibility of courts, and judicial construction has proved especially necessary with respect to Title VII, whose broad language frequently can be given meaning only by reference to public law concepts." *Id.* at 57, 94 S.Ct. at 1024.

We conclude that Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights *and parallel state statutory rights, thereby exempting state statutes from the provisions of the Federal Arbitration Act.* We emphasize that we reach this holding based upon the legislative history and congressional intent manifested by Congress in passing Title VII. The intent of the state legislature in passing the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–363.14 (1986 & Supp.1987), is not relevant to our holding. *Cf. Steck v. Smith Barney, Harris Upham & Co.,* 661 F.Supp. 543 (D.N.J.1987).[ ]

*Id.* at 1307–09 (footnotes omitted) (emphasis supplied).

■ This Court agrees with the reasoning and holding in *Swenson,* and concludes that the Tennessee Human Rights Act is exempt from the provisions of the Federal Arbitration Act. When plaintiff in the case at bar signed the employment contract containing the agreement to submit any dispute with defendant to binding arbitration, she did not thereby prospectively waive the right to have her claims of sex discrimination and sexual harassment under the Tennessee Human Rights Act adjudicated in federal district court.

■ Finally, the question arises whether plaintiff is required to submit her claims to arbitration under the Tennessee Uniform Arbitration Act. The Court has not found any case law directly on point. *Swenson* dealt specifically with the Federal Arbitration Act. The Court, however, is persuaded that the same reasoning and legal principles discussed in *Swenson* favor applying the *Swenson* holding to cases involving the arbitration of disputes under the Tennessee Uniform Arbitration Act. There is no logical reason to have a different rule for judicial remedies available under the Tennessee Human Rights Act when it is modeled after Title VII and the purposes of these state and federal anti-discrimination statutes are the same. *See Anderson v. Dean Witter Reynolds,* 449 N.W.2d 468 (Minn.Ct.App.1989). Tenn.Code Ann. § 4–21–101(a)(1) expressly provides that the purpose and intent of the General Assembly in enacting the Tennessee Human Rights Act is to provide for execution within Tennessee of the policies embodied in Title VII. The Supreme Court in *Alexander,* 415 U.S. at 56, 94 S.Ct. at 1023, determined that Congress intended for the courts to ultimately be responsible for enforcing Title VII and deferral by the courts to arbitral decisions would conflict with that goal. The *Alexander* Court stated that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025. The federal policy under Title VII articulated by the Supreme Court in *Alexander* also carries over and applies to the Tennessee Human Rights Act under the language of Tenn.Code Ann. § 4–21–101(a)(1). This Court has carefully reviewed the Tennessee Uniform Arbitration Act and it does not indicate whether claims brought under the Tennessee Human Rights Act are subject to arbitration. Accordingly, the Court concludes that the Tennessee Uniform Arbitration Act does not apply to the plaintiff's claims of sex discrimination and sexual harassment in the case at bar. Plaintiff has the right to have her claims adjudicated in a judicial forum rather than through arbitration.