826 F.Supp. 303 (1993)
Norma J. HULL, Plaintiff,
v.
NCR CORPORATION, Defendant.
No. 4:92CV002496 JCH.
United States District Court, E.D. Missouri, E.D.
July 14, 1993.
*304 Mary Anne Sedey, Mary Anne Sedey, P.C., St. Louis, MO, for plaintiff.
Eric M. Trelz, Sonnenschein and Nath, St. Louis, MO, for defendant.

ORDER
HAMILTON, District Judge.
This matter is before the Court on Defendant's Motion to Stay Action and Compel Arbitration. The motion was filed March 15, 1993.
Plaintiff filed this suit alleging that, during her employment with Defendant, Defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213 et seq.; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. When Plaintiff began employment with Defendant on July 8, 1985, Plaintiff signed a document entitled "Employment Contract." The Employment Contract contains an arbitration provision which states:
Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
Defendant moves the Court to stay this action and compel arbitration of Plaintiff's claims.
As a preliminary matter, the Court rejects Plaintiff's contention that the arbitration clause is unenforceable because the Employment Contract is not a valid contract under Missouri law. Plaintiff contends that the Contract is invalid because Plaintiff was terminable at will and a specified duration of employment is necessary for a valid employment contract. In support of her contention, Plaintiff cites cases which pertain to the cause of action for wrongful discharge. Defendant counters that the enforcement of an arbitration clause is more analogous to the enforcement of a covenant not to compete clause contained in an employment contract than to the tort of wrongful discharge. The Court agrees with Defendant. An employment contract containing a covenant not to compete does not lack mutuality and is enforceable where employment is terminable at will by either party. Deck and Deck Personnel Consultants, Ltd. v. Pigg, 555 S.W.2d 705, 707-08 (Mo.App.1977). The Court finds that Plaintiff's employment contract is enforceable because her employment was terminable at will by either Plaintiff or her employer. The Court further finds that the Contract was not illusory and that Defendant did not unilaterally terminate the agreement during Plaintiff's employment.
The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides that "a written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2. Defendant has shown and Plaintiff does not dispute that Plaintiff's employment responsibilities involved commerce.
The Supreme Court has established a two-step inquiry for consideration of whether to enforce an arbitration agreement. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). "The court is to make this determination by applying the `federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" Id. (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). The federal substantive law of arbitrability counsels that courts are to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.
[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be *305 resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.
Id. (citing Moses H. Cone Memorial Hospital, 460 U.S. at 24-25, 103 S.Ct. at 941).
In light of the broad arbitration provision in the Employment Contract (any "claim arising out of or relating to this contract") and because the FAA mandates that courts liberally construe the scope of arbitration agreements, the Court finds that the parties have agreed to arbitrate the claims in this suit.
The second inquiry is whether the claims at issue are within any category of claims as to which agreements to arbitrate are held unenforceable. Id., 473 U.S. at 627, 105 S.Ct. at 3354. Courts must rely on congressional intention expressed in some other statute to identify categories of nonarbitrable claims. Id. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 628, 105 S.Ct. at 3355.
Claims under ADEA are arbitrable because there is no congressional intent to preclude arbitration of these claims. Gilmer v. Interstate Johnson Lane Corp., ___ U.S. ___, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).
Whether claims under Title VII are arbitrable is, however, unclear in this Circuit. Prior to Gilmer, the Court of Appeals for the Eighth Circuit wrote that Congress intended to preclude arbitration of Title VII claims under the FAA. Swenson v. Management Recruiters Int'l, Inc., 858 F.2d 1304 (8th Cir.1988), cert. denied 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989). The Court of Appeals reasoned that "Congress has articulated an intent through the text and legislative history of Title VII to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel state statutory rights." Id. 858 F.2d at 1309. On the basis of the congressional intent to preclude waiver, the Court held that Title VII and parallel state statutes were exempt from the FAA. Id. The Court relied heavily on Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), where the Supreme Court held that arbitration of a grievance under a collective bargaining agreement did not foreclose an employee's statutory right to also pursue a Title VII claim based on the same incident.
The Eighth Circuit's holding in Swenson is undermined by Gilmer. There, the Supreme Court distinguished the holding in Gardner-Denver from the issue in Gilmer which was whether a statutory claim could be subjected to arbitration pursuant to an agreement. Gilmer, ___ U.S. at ___, 111 S.Ct. at 1657. The Supreme Court wrote:
There are several important distinctions between the Gardner-Denver line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." Mitsubishi, 473 U.S. at 625 [105 S.Ct. at 3353]. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.
Id. Because the Supreme Court has stated that its holding in Gardner-Denver is inapplicable to the issue of whether statutory claims are arbitrable, the rationale supporting the Eighth Circuit's decision in Swenson *306 has been eroded. The Court, therefore, finds it inappropriate to follow Swenson.
Because Title VII and ADEA are similar in their aims and their substantive provisions, Lorillard v. Pons, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), and in light of Gilmer, this Court concludes that Title VII claims, like ADEA claims, are subject to arbitration under the FAA. Accord Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir.1992) (Title VII claims are subject to arbitration.); Mago v. Shearson Lehmann Hutton, Inc., 956 F.2d 932 (9th Cir.1992) (The Supreme Court's treatment of Gardner-Denver in Gilmer "is dispositive here." Plaintiff did not meet burden of showing that Congress, in enacting Title VII, intended to preclude arbitration of those claims under the FAA.); Willis v. Dean Witter Reynolds, Inc. 948 F.2d 305 (6th Cir. 1991) (Title VII claims are arbitrable.); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 (5th Cir.1991) (Supreme Court remanded case for further consideration in light of Gilmer; on remand, Title VII claims held subject to arbitration under the FAA.).
The Court also finds that Plaintiff's claims under the MHRA, a parallel state statutory right to Title VII, are subject to arbitration under the FAA.
The final issue concerning the enforcement of the arbitration agreement is whether the exclusionary clause of the FAA applies. The last sentence of section 1 of the FAA states "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiff suggests that the FAA does not apply to employment contracts generally. Alternatively, Plaintiff contends that even if the FAA does apply to employment contracts Plaintiff falls within the section 1 exclusion as a worker engaged in interstate commerce.
The Supreme Court expressly refused to address whether individual contracts of employment are excluded from the FAA under the section 1 exclusion.[*]Gilmer, ___ U.S. at ____ n. 2, 111 S.Ct. at 1651 n. 2. In absence of binding authority indicating that all contracts of employment are excluded from the FAA, the Court will follow the other courts which have applied the FAA to individual employment contracts. See e.g., Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1069 (2nd Cir.1972) (agreement to arbitrate contained in terms of contract between basketball team and player). But see Gilmer, ___ U.S. at ___, 111 S.Ct. at 1657 (Stevens, J., dissenting) ("In my opinion, arbitration clauses contained in employment agreements are specifically exempt form coverage of the FAA....") and Willis, 948 F.2d at 311-312 (Like collective bargaining agreements individual employment contracts are outside the scope of the FAA.).
Neither the Supreme Court nor the Court of Appeals for the Eighth Circuit has addressed the scope of the phrase "any other class of workers engaged in foreign or interstate commerce" which is contained in the section 1 exclusion. Other circuits, however, have addressed this issue. In Tenney Engineering, Inc. v. United Electric Radio & Machine Workers, 207 F.2d 450 (3rd Cir. 1953), the Third Circuit held that section 1 did not exclude all contracts of employment from the scope of the FAA. The Court reasoned that, in purposefully following the specific exemption created for seamen and railway workers with the words "any other class of workers engaged in foreign or interstate commerce," the drafters intended to exempt only those classes of workers "actually engaged in the movement of interstate or foreign commerce." Id. at 452. "The draftsmen had in mind two groups of transportation workers as to which special arbitration legislation already existed and they rounded out the exclusionary clause by excluding all other similar classes of workers." Id. at 452-53.
Since Tenney, the First, Second, and Seventh Circuits have adopted similar constructions of the section 1 exclusionary clause. *307 See Miller Brewing Co. v. Brewery Workers, 739 F.2d 1159, 1162 (7th Cir.1984), cert. denied 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985) (Section 1 exclusion limited to workers employed in the transportation industry.); Erving, 468 F.2d at 1069 (Exclusionary clause applies only to "those actively involved in the transportation industry."); Dickstein v. duPont, 443 F.2d 783, 785 (1st Cir.1971) (Exception limited to employees involved in or closely related to the actual movement of goods in interstate commerce.); Pietro Scalzitti Co. v. International Union of Operating Engineers, 351 F.2d 576, 579-80 (7th Cir.1965) (Exclusion relates only to workers engaged in the movement of interstate or foreign commerce.). Construing the section 1 exclusion in accord with these cases means that the FAA is applicable to nonunion employment contracts involving workers who are not involved in the transportation industry. See Management Recruiters Int'l, Inc. v. Nebel, 765 F.Supp. 419, 421 (N.D.Ohio 1991).
Plaintiff urges the Court to accept a broader definition of class of workers involved in interstate commerce. Plaintiff cites United Electrical, Radio & Mechanical Workers v. Miller Metal Products, 215 F.2d 221 (4th Cir.1954), where the Fourth Circuit rejected Tenney writing:
Nor are we impressed by the argument that the excepting clause of the statute should be construed as not applying to employees engaged in the production of goods for interstate commerce as distinguished from workers engaged in transportation in interstate commerce, as held by the majority in Tenney Engineering. ...
Id. at 224. The Fourth Circuit, however, emphasized that its holding pertained only to an arbitration clause in a collective bargaining agreement:
What we decide, and all we decide, is that the arbitration clause in the collective bargaining agreement here does not cover the matter of damages arising out of violation of the no-strike clause and that the provisions of the United States Arbitration Act may not be relied on to stay proceedings in a suit brought on a collective bargaining agreement entered into by workers engaged in interstate commerce as those here were engaged.
Id.
Because the Fourth Circuit's reasoning focused on a collective bargaining agreement and in light of the contrary holdings of other circuits, the Court is not persuaded that it is appropriate to follow the Fourth Circuit. The Court will follow Tenney and the cases which adopt its holding. Because Plaintiff is not a seaman, railroad worker, or an employee actually engaged in the movement of interstate or foreign commerce, she is not a member of the "class of workers" referred to in the exclusionary clause. The exclusionary clause in section 1 is not applicable to Plaintiff, the FAA controls the arbitration provision in the Employment Contract.
Accordingly, the Court will stay the action and compel arbitration of the issues raised in this action. See 9 U.S.C. § 3; Moses H. Cone Memorial Hospital, 460 U.S. at 26, 103 S.Ct. at 942.
IT IS HEREBY ORDERED that Defendant's Motion to Stay Action and Compel Arbitration [docket # 7] is GRANTED.
Due to the stay, this action cannot proceed to trial.
IT IS FURTHER ORDERED that the Clerk of the Court mark this action closed for statistical purposes.
IT IS FURTHER ORDERED that the Court shall retain jurisdiction. The case shall be restored to the trial docket, upon motion of any party if circumstances change, so that it may proceed to final disposition. This order shall not prejudice the rights of any party to this litigation.
NOTES
[*] Collective bargaining agreements are agreed to be excluded from the scope of the FAA under section 1. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286 (1987); Bacashihua v. United States Postal Service, 859 F.2d 402, 404-05 (6th Cir.1988).