Linda WILLIS, Plaintiff–Appellee,

v.

DEAN WITTER REYNOLDS, INC., Defendant–Appellant.

No. 91–5100.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 2, 1991.

Decided Nov. 7, 1991.

Winifred L. Bryant (argued), Richard E. Fitzpatrick (briefed), Gess, Mattingly & Atchison, Lexington, Ky., for Linda Willis.

Anita M. Britton (briefed), Stoll, Keenon & Park, Lexington, Ky., William E. Johnson (argued), Stoll, Keenon & Park, Frankfort, Ky., for Dean Witter Reynolds, Inc.

Carolyn L. Wheeler (briefed), E.E.O.C., Washington, D.C., for E.E.O.C. amicus curiae.

Before KENNEDY and JONES, Circuit Judges and HARVEY, Senior District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Defendant Dean Witter Reynolds, Inc. ("Dean Witter") appeals the district court's denial of its motion to compel arbitration and for stay of the proceedings in this Title VII action for sex discrimination. For the reasons that follow, we reverse.

## I.

The plaintiff, Linda Willis, originally filed this action in Fayette Circuit Court in August 1990. Her complaint alleged sexual harassment and sexual discrimination claims under Ky.Rev.Stat. § 344.040 as well as common law contract claims of outrage and breach of contract. She had been employed at Dean Witter from October 4, 1982 until May 23, 1989, when she resigned from the company. Her complaint alleged that during the last two years of her employ at Dean Witter, the work environment was "hostile and demeaning to all female employees" and that she "was discharged and/or forced by [Dean Witter] to resign her employment ... on May 23, 1989, because of her sex." J.App. at 9–10.

Dean Witter immediately removed the case to federal court based upon diversity jurisdiction and filed its motion to compel arbitration. Dean Witter's motion to compel arbitration is based upon Willis' execution of a Securities Registration Form U–4 on October 1, 1982. This form is used by the American Stock Exchange, the National Association of Securities Dealers and the New York Stock Exchange ("NYSE") for registration of persons dealing in securities. Willis' registration with the various national securities exchanges was required so that she could perform her work as an account executive with Dean Witter. The arbitration clause of the U–4 Form provides in relevant part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register.

Securities Registration Form U–4 (in effect October 1982). Rule 347 of the New York Stock Exchange Rules provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these Rules.

NYSE Rule 347.

Willis responded to Dean Witter's motion and filed a motion for leave to amend her complaint to add a claim under Title VII. The issue of the arbitrability of all claims, including the tendered Title VII claim, was briefed by both parties and a hearing was held on December 21, 1990. On the same day the court entered its memorandum and order granting Willis leave to amend her complaint, granting Dean Witter's motion to compel arbitration on Willis' contract claims, and denying the motion to compel arbitration of Willis' claims under Title VII and Kentucky civil rights provisions. 753 F.Supp. 206. This timely appeal followed.

## II.

The sole issue before the court is whether the district court erred in denying Dean Witter's motion to compel arbitration of Willis' civil rights claims based upon the arbitration clause in the securities registration form and relevant New York Stock Exchange Rules. The parties' briefs and the amicus brief submitted by the Equal Employment Opportunity Commission ("EEOC") in support of the plaintiff were all written prior to the Supreme Court's

[*] The Honorable James Harvey, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

decision in *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the Supreme Court held that the same arbitration clause, contained in the same securities registration form and New York Stock Exchange rule, was enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–15 (1988), and that an action brought by a securities dealer for age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, was subject to mandatory arbitration. *Gilmer*, 111 S.Ct. at 1657. As will be elucidated below, we find *Gilmer* to be dispositive of every argument presented by the plaintiff and the EEOC in this appeal. *Cf. Alford v. Dean Witter Reynolds, Inc.*, 905 F.2d 104 (5th Cir.1990), *vacated*, —— U.S. ——, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991) (decision finding Title VII claims non-arbitrable under the FAA vacated and remanded for reconsideration in light of *Gilmer*).

*Gilmer* involved a suit by a former registered securities representative for discrimination under the ADEA. Like Willis, the plaintiff in *Gilmer* was required to register as a securities representative with several stock exchanges, including the NYSE, as a condition of employment. The plaintiff's registration application, the Uniform Application for Securities Industry Registration or Transfer, provided that the plaintiff, among other things, " 'agree[d] to arbitrate any dispute, claim or controversy' arising between him and [his employer] 'that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which [he] register[s].' " *Gilmer*, 111 S.Ct. at 1650 (quoting Securities Registration Form). Under NYSE Rule 347, quoted above, the plaintiff was required to arbitrate any controversy " 'arising out of the employment or termination of employment of such representative.' " *Id.* at 1651 (quoting Rule 347).

The defendant in *Gilmer* claimed that the arbitration agreement in the Securities Registration Form and the FAA required that the plaintiff's claim under the ADEA be submitted to arbitration. The district court below denied the defendant's motion for arbitration based upon the Supreme Court's decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), "and because it concluded that 'Congress intended to protect ADEA claimants from the waiver of a judicial forum.' " *Gilmer*, 111 S.Ct. at 1651.

■ The Supreme Court, agreeing with the Fourth Circuit, reversed the district court and held that nothing in the ADEA or its legislative history suggested that the arbitration clause in the Securities Registration Form should not be enforced under the FAA. We find that the Court's analysis and conclusions in *Gilmer* compels the conclusion that the FAA and arbitration provisions of the Securities Registration Form apply equally to Willis' Title VII claims in the instant case.

### A.

Willis and the EEOC first contend that the Supreme Court's decision in *Alexander* precludes application of the FAA or the arbitration provision of the Securities Registration Form to Title VII claims. In *Alexander*, the Supreme Court considered whether a union employee was foreclosed from pursuing an action under Title VII after he had been unsuccessful in an arbitration compelled by his collective bargaining agreement. In deciding that the employee was not so precluded, the Court analyzed the purposes and enforcement scheme embodied in Title VII and, finding that "federal courts have been assigned plenary powers to secure compliance with Title VII," held that

> [t]here is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction.

415 U.S. at 45, 47, 94 S.Ct. at 1018, 1019. Willis argues that *Alexander* precludes a finding that employees can waive their right to court adjudication of their Title VII claims by signing an agreement with an arbitration clause contained therein. *See Swenson v. Management Recruiters Int'l, Inc.*, 858 F.2d 1304 (8th Cir.1988), *cert.*

*denied,* 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989) (relying on *Alexander* to find that Title VII not subject to waiver through arbitration clause); *Utley v. Goldman Sachs & Co.,* 883 F.2d 184 (1st Cir. 1989). *But see Alford,* 905 F.2d at 104 (relying on *Alexander* to find Title VII not subject to arbitration, but vacated for reconsideration in light of *Gilmer* ).

Although the Supreme Court does not overrule *Alexander* in *Gilmer,* it does reject a reading of *Alexander* as prohibiting the arbitration of employment discrimination claims. *Gilmer,* 111 S.Ct. at 1656. Specifically, in response to the arguments based upon *Alexander,* the Court in *Gilmer* states:

> There are several important distinctions between the *[Alexander v.] Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

*Gilmer,* 111 S.Ct. at 1657 (citation omitted). Given the Court's plain exposition here on its view of the meaning of *Alexander* and the Court's decision vacating *Alford* which took exactly the position put forward by the plaintiff in the instant case, we find reliance on *Alexander* in this context to be foreclosed.

**B.**

Willis and the EEOC next contend that the regulatory scheme set up by Title VII, including its provision for EEOC oversight and enforcement, the importance of judicial review, and the important public policy concerns the statute protects, preclude a finding that the FAA applies to Title VII claims. Once again, *Gilmer* rejects all of these arguments.

In *Gilmer* the Court begins its discussion of the FAA with a recognition of its broad scope and a summary of recent statutory rights which have been held to be arbitrable under the FAA. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (finding claims under the Sherman Act arbitrable); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (finding claims under the civil provisions of RICO and § 10(b) of the Securities Exchange Act arbitrable); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (finding claims under the Securities Act of 1933 arbitrable). After summarizing its recent cases regarding the scope of the FAA, the Court states:

> In these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354.

*Gilmer,* 111 S.Ct. at 1652. The Court goes on to state that

> [a]lthough all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'

*Id.* (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354–55).

The plaintiff in *Gilmer* attempted to demonstrate that Congress had meant to exempt the ADEA from arbitration by references to the statutory scheme, the statute's purposes and public importance of the rights protected under the ADEA. *See Gilmer,* 111 S.Ct. at 1652–53. Further, just as Willis and the EEOC argue in the present case, the plaintiff in *Gilmer* argued that the scheme of EEOC enforcement of the ADEA evidenced that the ADEA was ill-suited to settlement proceedings through arbitration. *Id.* at 1653. In response to these arguments, the Court stated:

> We also are unpersuaded by the argument that arbitration will undermine the role of the EEOC in enforcing the ADEA. An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action.... Moreover, nothing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes.... Finally, the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration. For example, the Securities Exchange Commission is heavily involved in the enforcement of the Securities Exchange Act of 1934 and the Securities Act of 1933, but we have held that claims under both of those statutes may be subject to compulsory arbitration. *See McMahon; Rodriguez de Quijas.*

*Gilmer,* 111 S.Ct. at 1653. As there is no relevant difference between the EEOC's role under the ADEA and the agency's role under Title VII, we also find this avenue to be foreclosed.

Willis next contends that Congress in enacting Title VII expressed a preference for a judicial forum. However, the Court in *Gilmer* rejected this argument when put forward by the plaintiff in relation to the ADEA. The *Gilmer* Court reasoned that Congress ... did not explicitly preclude arbitration or other non-judicial resolution of claims, even in its recent amendments to the ADEA. '[I]f Congress intended the substantive protection afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.'

*Gilmer,* 111 S.Ct. at 1654 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354). As described above, the Supreme Court in *Alexander* had found such an intent expressed by Congress with regard to a preference for a judicial forum for Title VII. The Court in *Gilmer* limited, however, the scope of *Alexander* to circumstances in which the agreement to arbitrate did not include a waiver of statutory rights independent of the collective-bargaining agreement. *See Gilmer,* 111 S.Ct. at 1657. Thus, we find that the Court has rejected the argument that Title VII precludes an arbitral forum from handling such claims if a party agrees to submit all statutory claims to arbitration. *See Alford,* 905 F.2d 104.

Finally, the *Gilmer* Court also rejected a claim that the importance of the rights protected under the ADEA precluded arbitration. In *Gilmer,* the plaintiff asserted that the public policy functions of the ADEA, including the impact of such claims on societal discrimination, as well as the protection of individual rights, made the ADEA inappropriate for non-judicial resolution. The Court responded as follows:

> As Gilmer contends, the ADEA is designed not only to address individual grievances, but also to further important social policies. We do not perceive any inherent inconsistency between those policies, however, and enforcing agreements to arbitrate age discrimination claims. It is true that arbitration focuses on specific disputes between the parties involved. The same can be said, however, of judicial resolution of claims. Both of these dispute resolution mechanisms nevertheless also can further broader social purposes. The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to

advance important social public policies, but, as noted above, claims under those statutes are appropriate for arbitration. '[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' *Mitsubishi,* 473 U.S. at 637, 105 S.Ct. at 3359.

*Gilmer,* 111 S.Ct. at 1653. This passage, particularly the last quotation from *Mitsubishi,* indicates a rejection of the assertion that employment discrimination claims are inappropriate for arbitration because they involve or impact public rights and policies. Thus, we find this argument also to be foreclosed.

### C.

Willis and the EEOC next contend that arbitration is inappropriate for Title VII claims because arbitration provides insufficient procedural safeguards and different mechanisms for discovery than are available in a judicial forum. In response to these same arguments put forward in *Gilmer,* the Court stated as an initial matter:

> In arguing that arbitration is inconsistent with the ADEA, Gilmer also raises a host of challenges to the adequacy of arbitration procedures. Initially, we note that in our recent arbitration cases we have already rejected most of these arguments as insufficient to preclude arbitration of statutory claims. Such generalized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.' *Rodriguez de Quijas,* 490 U.S. at 481, 109 S.Ct. at 1920.

*Gilmer,* 111 S.Ct. at 1654. The Court then went on to interpret the same NYSE arbitration rule at issue in this case to reject all of the plaintiff's remaining procedural objections to arbitration of his claims under the ADEA. *See id.* at 1654–55. As the same procedural safeguards are at issue in

this case under the NYSE rules, we are compelled to reject those arguments based upon alleged procedural deficiencies in the arbitral process as a basis for finding Willis' Title VII claim non-arbitrable.

### III.

Thus far we have concluded that nothing in Title VII itself precludes the enforcement of the arbitration provision contained in the U–4 Securities Registration Form under the FAA if the FAA applies. As a final argument, however, the EEOC claims that FAA does not apply to this case because the exclusion clause of the FAA specifically excepts from the scope of the Act any "contracts of employment." 9 U.S.C. § 1. Willis and the EEOC argue that the arbitration clause embodied in Willis's securities registration application is part of a contract for employment. We disagree.

As the EEOC points out, Section 1 of the FAA states:

> [N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1. In holding that the FAA was based upon the broad power of Congress to regulate commerce, the Court suggested in *Southland Corp. v. Keating* that Congress' use of the term "commerce" in the FAA was meant to extend the applicability of the Act and its exclusions to the scope of Congress' power under the commerce clause. 465 U.S. 1, 11–16, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984); *see also Foster v. Turley,* 808 F.2d 38, 40 (10th Cir. 1986) (with respect to the FAA, the "requirement that the underlying transaction involve commerce is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause"); *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986) (commerce under the FAA includes all contracts "relating to interstate commerce"). While the cases just mentioned interpreted the term "involving commerce" in relation

to § 2 of the FAA, courts have held that the same meaning for "commerce" was meant to apply throughout the entire Act, including § 1. *See United Elec., Radio, & Mach. Workers v. Miller Metal Prods., Inc.*, 215 F.2d 221, 224 (4th Cir.1954) (declining to adopt a narrow construction of § 1 because the inclusionary language in § 2 was intended to exercise the full extent of the commerce power and reading the exclusionary clause using similar language narrowly would be inconsistent); *see also* A. Cox, *Grievance Arbitration in the Federal Courts*, 67 Harv.L.Rev. 591, 599 (1954) ("One should not rely on one policy in interpreting the phrases relating to commerce and an opposite conception in reading 'contract of employment' ").

■ Further, Title VII and the ADEA were both enacted under Congress' power to regulate commerce under the commerce clause of the United States Constitution. Based upon Congress's determination in Title VII that any employer with 15 or more employees necessarily implicates interstate commerce, any claims implicating employment contracts with employers subject to regulation under Title VII or the ADEA would necessarily implicate interstate commerce. Thus, all employment contracts with employers subject to regulation under Title VII—or other similar acts of Congress designed to protect employees from unlawful discrimination and enacted pursuant to Congress's commerce power—fall within the exclusion of "contracts of employment" under § 1 of the FAA.

A review of the legislative history of the FAA confirms that the FAA was never meant to incorporate employment contracts with the requisite effects on interstate commerce within its scope. The Act was originally drafted by a committee of the American Bar Association to overturn a common-law rule which precluded enforcement of agreements to arbitrate in commercial contracts. *See Gilmer*, 111 S.Ct. at 1659 (Stevens, J., dissenting); *see also Southland Corp.*, 465 U.S. at 14, 104 S.Ct. at 860 (1984) ("The problems Congress faced [when passing the Act] were therefore twofold: the old common-law hostility

toward arbitration and the failure of state arbitration statutes to mandate enforcement of arbitration agreements"). At a hearing of the Senate Judiciary Committee, the chairman of the ABA committee responsible for drafting the bill stated that the bill "is not intended [to] be an act referring labor disputes, *at all*. It is purely an act to give the *merchants* the right or privilege of sitting down and agreeing *with each other* as to what their damages are, if they want to do it. Now that is all there is in this." *Hearings on S. 4213 and S. 4214 Before the Subcomm. on the Judiciary*, 67th Cong. 4th Sess. 9 (1923) (emphasis added). Therefore, the plain language of the exclusion, taken with the description of its meaning by the chairman of the committee that drafted the FAA, suggests an intent to create a mechanism through which businesses might agree to resolve disputes without recourse to the courts. Thus, although Congress passed the FAA to ensure that courts honor the contractual agreement of parties who choose to resolve their disputes by arbitration, *Mitsubishi*, 473 U.S. at 625–26, 105 S.Ct. at 3353, it limited the scope of the Act by creating a category of contracts not subject to the Act's strictures. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (the Act only mandates enforcement of arbitration clauses in contracts covered by the Act). Among this category of excluded contracts are "contracts for employment." 9 U.S.C. § 1.

Consistent with this reading of § 1 of the FAA, this court has held that collective bargaining agreements are "contracts of employment" and therefore outside the scope of the FAA. *See, e.g., Bacashihua v. USPS*, 859 F.2d 402, 404–05 (6th Cir. 1988) (finding collective bargaining agreements are "contracts of employment" within the meaning of § 1 of the FAA and thus excluded from the coverage of the Act); *Occidental Chem. Corp. v. Local 820, Int'l Chem. Workers Union*, 853 F.2d 1310, 1315 (6th Cir.1988); *accord United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 372 n. 9, 98 L.Ed.2d 286 (1987) ("The Arbitration Act does not apply

to 'contracts of employment of ... workers engaged in foreign or interstate commerce.'"). We can see no reason to conclude that individual employment contracts involving employers engaged in interstate commerce should be treated differently. Had Congress intended to limit the meaning of the phrase "contracts of employment" in § 1 of the FAA to encompass only collective bargaining agreements, it surely would have said so.

However, while it seems clear that "contracts for employment" are excluded from the scope of the FAA, the Supreme Court in *Gilmer* specifically found that the Securities Registration Form containing the arbitration provision at issue in that case, as in the case before us, was not a "contract for employment." In response to the dissent's argument that the Court should decide the case based upon the exclusion of "contracts of employment" from the scope of the FAA, the court stated:

> Several *amici curiae* ... argue that [§ 1 of the FAA] excludes from the coverage of the FAA *all* 'contracts of employment.' ... In any event, it would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. The FAA requires that the arbitration clause being enforced be in writing. *See* 9 U.S.C. §§ 2, 3. The record before us does not show, and the parties do not contend, that Gilmer's employment agreement with Interstate [the employer] contained a written arbitration clause. Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with Interstate. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications. We implicitly assumed as much in *Perry v. Thomas* [482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)], where we held that the FAA required a former employee of

a securities firm to arbitrate his statutory wage claim against his former employer, pursuant to an arbitration clause in his registration application. Unlike the dissent, we choose to follow the plain language of the FAA and the weight of authority, and we therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement. Consequently, we leave for another day the issue raised by the *amici curiae.*

*Gilmer,* 111 S.Ct. at 1651 n. 2 (emphasis added) (citations omitted). Willis and the EEOC argue that, despite *Gilmer,* we should construe the arbitration provision contained in Willis' registration application as part of her contract of employment. This position is clearly foreclosed, however, by the plain language of *Gilmer.*

## IV.

In sum, we hold that the district court's denial of the defendant's motion to arbitrate Willis' discrimination claims was in error. The plaintiff's arguments which suggest that something inherent in Title VII precludes the enforcement of valid arbitration agreements in circumstances where the FAA is otherwise applicable was rejected in *Gilmer.* Further, while § 1 of the FAA excludes "contracts of employment" from the scope of the FAA, the Supreme Court has squarely held that arbitration agreements contained in a securities registration application such as the one at issue in this case do not constitute contracts for employment. Thus, § 1 of the FAA does not exempt Willis' discrimination claims from her agreement to arbitrate.

Therefore, the decision of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.