**Sandra BENDER, Plaintiff,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO. INC., Richard T. Carlin, Jr., and John Maine, Defendants.**

**Civ. A. No. 91–5493 (WGB).**

United States District Court,
D. New Jersey.

April 8, 1992.

Shur & Guttman, Philadelphia, Pa., by Ronald Shur, Reuben Guttman, Tomar, Simonoff, Adourian & O'Brien, Haddonfield, N.J. by Justin T. Loughry, for plaintiff.

Shanley & Fisher, Morristown, N.J., by Arthur Havinghorst II, Brian McDonough, for defendants.

1. Plaintiff claims she retained new counsel because she never authorized her former attorney to execute the October 1990 Stipulation and Order.

2. The EEOC right to sue letter states in part:

## OPINION

BASSLER, District Judge:

Defendants move to dismiss the complaint, or in the alternative to compel arbitration. For the following reasons defendants' motion shall be granted in part and denied in part.

### I. BACKGROUND.

On June 18, 1990, the plaintiff, Sandra Bender filed an action in this Court against the defendants (civil action number 90–2347) alleging violations of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1985(3), breach of contract, tortious interference with advantageous relationships, defamation and intentional infliction of emotional distress.

On August 10, 1990 defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or to compel arbitration. On October 26, 1990 the Honorable John F. Gerry, U.S.D.J. signed a consent order which stated in pertinent part:

> IT IS FURTHER ORDERED THAT this action will be stayed pending referral of the matter to arbitration, subject to dismissal by the Court in the event that plaintiff fails to seek arbitration by January 18, 1991; ...

*See*, Exhibit C annexed to Certification of Arthur Havinghorst, II, Esq.

Subsequently, plaintiff retained new counsel, Louis R. Moffa, Jr.[1] On January 8, 1991, plaintiff voluntarily dismissed Civil Action Number 90–2347 pursuant to Fed. R.Civ.P. 41(a)(1). *See*, Affidavit of Sandra Bender at ¶ 6 and Exhibit A.

On July 28, 1991, upon returning to the United States, plaintiff picked up her mail from the United States Post Office. *Id.* at ¶¶ 7–8. Included in the mail was an Equal Employment Opportunity Commission ("EEOC") Determination, or "right to sue" letter, dated and mailed on July 15, 1991, which gave plaintiff the right to bring the Title VII claims in *this* case. *Id.* at ¶ 9 and Exhibit B; *see also* Exhibit B annexed to Havinghorst Affidavit.[2]

> The charging party [plaintiff] may only pursue this matter further by filing suit against the respondent's named in the charge in Federal District Court Within 90 days of the charging party's receipt of this letter....

On October 15, 1991, plaintiff filed this case in the New Jersey Superior Court, Camden County. On December 19, 1991, defendants removed the matter to this Court.

On February 14, 1992, defendants filed this motion to dismiss the complaint or in the alternative to compel arbitration. Plaintiff opposes the motion and demands a jury trial, pursuant to 9 U.S.C. § 4, on the issue of whether an agreement was made to arbitrate claims such as those in this case.

## II. STATEMENT OF FACTS

On August 16, 1989, in connection with beginning employment with defendant, Smith Barney, Harris Upham & Co., Inc. ("Smith Barney"), plaintiff signed a Form U–4 to effect the transfer of her registration with certain securities exchanges and organizations.[3] *See,* Exhibit A annexed to the Certification of Arthur Havinghorst, II, Esq.

Paragraph 5 of the Form U–4 states in its entirety:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register, as indicated in Item 10 as may be amended from time to time.

Plaintiff asserts that at no time did she believe that the arbitration provision set forth in ¶ 5 of the Form U–4 applied to employment related disputes, including those in this case. *See,* Affidavit of Sandra Bender at ¶¶ 11–12. Alternatively, she submits that if ¶ 5 of the Form U–4 does incorporate an agreement to arbitrate employment related disputes, she was fraudulently induced into signing the agreement. She bases this allegation on the fact that Smith Barney failed to disclose to her the employment related arbitration agreement

in ¶ 5 itself, in the Smith Barney Employee Handbook, or elsewhere. *Id.* at ¶ 15. Finally, she maintains that to compel arbitration of Title VII claims contravenes public policy considerations.

## III. DISCUSSION

### A. *Defendants' Motion to Dismiss.*

Defendants make two arguments in support of dismissal. First they argue that this Court's October 1990 Stipulation and Order precludes the present action. Secondly, they argue that plaintiff's present lawsuit must be dismissed as it is time barred by the 90 day limitations period set forth in the EEOC right to sue letter. I will address both arguments in turn. Fed. R.Civ.P. 41(a)(1) permits a plaintiff to voluntarily dismiss an action where an answer has not been served or a motion for summary judgment has not been made. The rationale behind this rule is to permit the voluntary cessation of an action only before the parties or the Court become actively involved in the litigation. *See,* 5 Moore's Federal Practice, ¶ 41.02.

Defendants argue that a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) has been held the functional equivalent of a summary judgment motion for purpose of voluntary dismissal of an action pursuant to Fed.R.Civ.P. 41(a). But defendants are incorrect. In fact, the Third Circuit has specifically held that regardless of the characterization of a motion to dismiss for failure to state a claim as a motion for summary judgment, Fed.R.Civ.P. 41(a) is quite clear in specifying that voluntary dismissal is only permitted before an answer or motion for summary judgment has been filed. Simply converting the motion does not satisfy the requirements of the rule. *Manze v. State Farm Ins. Co.,* 817 F.2d 1062 (3d Cir.1987). Hence, plaintiff's voluntary dismissal of the complaint was prop-

---

**3.** The Form U–4 (Uniform Application for Securities Registration and Transfer) is a standard, industry wide document signed by licensed securities representatives in order to become registered with their prospective firms. Plaintiff

had previously been a registered representative with other firms; Oppenheimer & Company, and Janney Montgomery Scott, and had executed a Form U–4 for these positions as well.

er and rendered this Court's Stipulation and Order moot.[4]

Next, defendants submit that the complaint must be dismissed as it was filed after the expiration of the 90 day limitations period set in the EEOC right to sue letter. But as stated above, the EEOC letter was dated and mailed on July 15, 1991. Regardless of the fact that plaintiff alleges that she did not receive the letter until July 28, 1991, plaintiff filed the present action on October 15 or 16, 1991.[5] The EEOC right to sue letter, as set forth above, states that suit shall be filed within 90 days of the charging party's *receipt* of the letter. Assuming that defendant is correct and the complaint was not filed until October 16, 1991, it is highly probable that plaintiff did not receive the letter until at least July 16, 1991.

■ Finally, the fact that the suit was filed in state court is irrelevant as state and federal courts have concurrent jurisdiction over Title VII claims. *See, Yellow Freight Systems v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Accordingly, I conclude that defendants' argument that plaintiff's complaint must be dismissed as time barred is likewise without merit.

### B. Defendants' Request to Compel Arbitration.

■ Pursuant to Item 10 of the Form U-4, plaintiff agreed to transfer her registration with the America Stock Exchange (ASE), the National Association of Securities Dealers (NASD), and the New York Stock Exchange (NYSE).

These exchanges and the NASD are part of the scheme of "self-regulation" that Congress imposed in the Securities Exchange Act of 1934 and its subsequent amendments. Each of the three exchanges (ASE, NYSE and NASD) have detailed rules setting forth the guidelines for arbitration of controversies between representatives [plaintiff] and members [defendant, Smith Barney] arising out of the representative's employments. *See,* Rule 347 of the NYSE, *Constitution and Rules* (CCH 1991)[6]; the Constitution of the ASE, *Constitution and Rules,* (CCH 1991), Article II, § 9062; and the NASD Code of Arbitration, *Manual,* (CCH 1990), Part II, § 8(a) (see also pp. 9–10 of defendants' reply brief).

The above unequivocally compel plaintiff to arbitrate this dispute. Moreover, in § 2 of the Form U–4, plaintiff agreed to adhere to all the provisions of these organizations.

■ Plaintiff seeks to circumvent her responsibility to arbitrate the claims in this case by arguing that 9 U.S.C. § 4 mandates a jury trial on whether there exists an agreement to arbitrate claims arising out of her employment or termination of employment. Plaintiff places heavy reliance on *Par–Knit Mills, Inc. v. Stockbridge Fabric Company, Ltd.* 636 F.2d 51 (3d Cir.1980), arguing that the mere existence of a signed arbitration agreement does not eliminate the need for a jury trial if the party opposing the arbitration alleges that it did not intend the document to constitute an arbitration agreement.

In *Par–Knit,* what gave rise to the jury issue was whether the agent who initiated

---

**4.** Even if plaintiff's voluntary dismissal of the action was not proper, plaintiff's Title VII claims were not then before this Court. In October 1990, plaintiff had not yet exhausted her administrative remedies before the EEOC as evidenced by the fact that she did not receive the determination of charge and right to sue letter until sometime after July 15, 1991. Thus, in October of 1990, this Court did not have jurisdiction over plaintiff's Title VII claims and thus could not order the compulsory arbitration of those claims.

**5.** Plaintiff alleges that the complaint was filed on October 15, 1991, which was the day after

Columbus Day, a federal and state legal holiday. Defendants allege that the complaint was not filed until October 16, 1991 and that it was filed in state and not federal court.

**6.** Rule 347 of the NYSE states, in full, that: Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure described elsewhere in these rules.

the contract possessed actual or apparent authority so as to bind the corporation to an agreement to arbitrate. *Id.* 636 F.2d at 55. In fact the *Par–Knit* court held that:

A party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement which contained an arbitration clause. A naked assertion however, by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue "the making of the agreement" for the purposes of Section 4 of the Federal Arbitration Act. An unequivocal denial that the agreement had been made, accompanied by supporting affidavits, however, in most cases should be sufficient to require a jury determination on whether there had in fact been a "meeting of the minds." *quoting, Introcean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673 (2d Cir.1972). *Id.*

This is not a case where plaintiff disputes the existence of the arbitration agreement, but rather a case where the plaintiff challenges the scope of the arbitration clause. In *Par–Knit,* the jury was confined to determining whether the agent had the authority to bind the corporation to arbitration, since if he did not, no agreement would exist. There, the jury had no role in determining the scope of the arbitration agreement itself. In this case, plaintiff's "beliefs" surrounding the execution and scope of the arbitration clause are distinguishable from the *Par–Knit* situation and are insufficient to raise a jury question as to the existence of the arbitration agreement itself.

■ Moreover, because plaintiff's defense that she was fraudulently induced into signing the arbitration agreement is unsupported both factually and legally, it must also fail.

Plaintiff's fraudulent inducement claim can only stand if she can demonstrate reliance on an affirmative false representation or the withholding of the truth when it should have been disclosed. *See, Costello v. Porzlet,* 116 N.J.Super 380, 282 A.2d 432 (1971), and *Fidelity & Deposit Co. of Maryland v. Hudson United Bank,* 493 F.Supp. 434, 440 (D.N.J.1980).

Plaintiff attempts to support her fraudulent inducement claim in ¶¶ 10–15 of her Affidavit. But the Affidavit is barren of any facts constituting a false or misleading statement by Smith Barney—either as to the Form U–4 itself or as to any inducement to sign the form. Thus plaintiff is unable to demonstrate any reliance on an affirmative false representation. *See generally, Costello v. Porzlet, supra.*

■ In addition, plaintiff has failed to present any legal support establishing that Smith Barney had a duty to disclose or to explain the existence or scope of the Form U–4 arbitration clause. As a matter of law, brokers are not required to disclose or explain arbitration clauses to customers. *Rush v. Oppenheimer & Co., Inc.,* 681 F.Supp. 1045, 1052 (S.D.N.Y.1988), *citing, Pierson v. Dean Witter Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984). It stands to reason then that the duty to disclose would be even less in the case of parties dealing at arms length; i.e. the plaintiff and defendant in this case.

Lastly, even if Smith Barney had explained the scope of the arbitration clause to plaintiff, the end result would have been the same; the execution of a Form U–4 is not unique to Smith Barney employees and it is not optional. It is an SEC industry-wide requirement, a prerequisite to registration with any securities firm. Thus, plaintiff could not have been fraudulently induced into signing this document or could not have detrimentally relied on any affirmative representations rendered by Smith Barney. The Form U–4 is not promulgated by Smith Barney and Smith Barney has no authority to rewrite or otherwise amend the Form U–4. Smith Barney is bound by the terms of the Form U–4 to the same extent as plaintiff is bound.

■ Finally, plaintiff maintains that it is contrary to public policy to compel arbitration in Title VII actions. In support of her position plaintiff relies on *Swensen v. Management Recruiters International, Inc.,* 858 F.2d 1304 (8th Cir.1988), *cert. denied,* 493 U.S. 848, 110 S.Ct. 143, 107

L.Ed.2d 102 (1989), and *Alexander v. Gardner Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, I find plaintiff's argument to be unpersuasive in light of the Supreme Court's recent decision in *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). That case held that an age discrimination claim brought by a former registered securities representative under the Age Discrimination in Employment Act of 1967 (ADEA) was subject to compulsory arbitration through the Federal Arbitration Act because of the mandatory arbitration clause found in the securities registration Form U-4.[7]

Moreover, in the wake of *Gilmer*, two District Court decisions denying a request for compulsory arbitration under a Form U-4, were reversed and remanded. *See, Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991) and *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991). In fact, on remand, the *Alford* Court wasted little time in reversing its prior decision and held that Title VII claims are subject to arbitration under the Federal Arbitration Act, pursuant to the plaintiff's securities registration application with the NYSE and NASD. The *Alford* Court concluded:

> Because both the ADEA and Title VII are similar civil rights statutes, and both are enforced within the EEOC, *compare* 29 U.S.C. § 626 with 42 U.S.C. § 2000e-5, we have little trouble concluding that Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer.*

*Id.*, 939 F.2d at 230.

In *Willis*, the Sixth Circuit reversed its prior decision and compelled arbitration of a Title VII claim pursuant to a Form U-4 executed by the plaintiff in 1982. Interestingly, the Form U-4 in *Willis* was identical to the one executed by the plaintiff in this action.

While the Third Circuit has not had the opportunity to rule on this issue since *Gilmer*, I find no reason not to follow the rationale of the Fifth and Sixth Circuits with regards to compelling arbitration of Title VII actions. Therefore I conclude that it is not contrary to public policy to compel arbitration of Title VII claims.

### C. Conclusion.

Based upon the foregoing defendants' motion to dismiss the complaint is denied; however, their request for compulsory arbitration is granted. An appropriate order shall follow.

---

**7.** The *Gilmer* Court declined to follow *Alexander, supra.* In so holding, they differentiated between contract-based arbitration clauses, such as the arbitration clause in *Alexander* that occurred in the context of a collective bargaining agreement, and statutory based arbitration claims, i.e. ADEA claims or in this case, Title VII claims, enforceable under the Federal Arbitration Act:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. *Alexander v. Gardner Denver Co.*, 415 U.S., at 49-50, 94 S.Ct., at 1020. *Gilmer*, 111 S.Ct. at 1656.