# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | |
|---|---|
| **PATRICIA J. GUNBY**<br>**and JANICE HAMIL,** | ) |
| | ) |
| Plaintiffs/Appellees, | ) **Shelby Chancery No. 107064-1 R.D.** |
| | ) |
| **VS.** | ) **Appeal Nos. 02A01-9606-CH-00140** |
| | ) **and 02A01-9704-CH-00073** |
| **THE EQUITABLE LIFE ASSURANCE** | ) |
| **SOCIETY OF THE UNITED STATES,** | ) |
| **DAVID BRYAN, and BOB DUNHAM,** | ) |
| | ) |
| Defendants/Appellants. | ) |

**FILED**

**October 16, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE NEAL SMALL, CHANCELLOR


**STEPHEN H. BILLER**
**MAURICE WEXLER**
**BAKER, DONELSON, BEARMAN**
**& CALDWELL, P.C.**
Memphis, Tennessee
Attorneys for Appellants


**TIM EDWARDS**
**JAMES F. HORNER**
**GLASSMAN, JETER, EDWARDS & WADE**
Memphis, Tennessee
Attorneys for Appellees


**REVERSED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**CRAWFORD, P.J., W.S.**

**LILLARD, J.**

In these sexual discrimination/sexual harassment cases, consolidated on appeal,

Plaintiffs, Patricia Gunby ("Gunby") and Janice Hamil ("Hamil"), filed suit against

Defendants, The Equitable Life Assurance Society of the United States ("The Equitable"),

David Bryan ("Bryan") and Bob Dunham ("Dunham"), seeking damages for Defendants'

alleged acts of sexual discrimination and sexual harassment. The Defendants filed a

motion to compel arbitration and to stay the action pending arbitration or, in the alternative,

to dismiss. The trial court denied Defendants' motions. Defendants appeal the judgment

of the trial court arguing that the trial court erred in denying Defendants' motion to compel

Plaintiffs to submit their claims for sexual harassment and sexual discrimination to

arbitration. For the reasons stated hereafter, we reverse the judgment of the trial court.

**FACTS**

In April 1991, Gunby began employment with The Equitable as a commissioned

insurance salesperson. In August 1992, Hamil began employment with The Equitable as

a commissioned insurance salesperson. Upon commencing employment with The

Equitable, Plaintiffs executed a contract entitled Uniform Application for Securities Industry

Registration or Transfer (the "contracts") which provided in part as follows:

> I agree to arbitrate any dispute, claim or controversy that may
> arise between me and my firm, or a customer, or any other
> person, that is required to be arbitrated under the rules,
> constitutions, or by-laws of the [National Association of
> Securities Dealers, Inc. ("NASD")] . . . as may be amended
> from time to time.

At the time Plaintiffs signed the contracts, the Code of Arbitration Procedure

adopted by the NASD stated in part as follows:

> This Code of Arbitration Procedure is prescribed and adopted
> pursuant to Article IV, Section 2(b) of the By-Laws of the
> National Association of Securities Dealers, Inc. (the
> Association) for the arbitration of any dispute, claim or
> controversy arising out of or in connection with the business of
> any member of the Association, with the exception of disputes
> involving the insurance business of any member which is also
> an insurance company:
>
> (1) between or among members;
>
> (2) between or among members and public customers, or others; and
>
> (3) between or among members, registered clearing agencies
> with which the Association has entered into an agreement to

> utilize the Association's arbitration facilities and procedures, and participants, pledgees or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

NASD (CCH) § 3701 (June 1, 1990).

During Plaintiffs' period of employment with The Equitable, the NASD amended its Code of Arbitration Procedure, which became effective on October 1, 1993. NASD's amended Code of Arbitration Procedure provided for the arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any members of the Association, or arising out of termination of employment of associated persons with any member." NASD (CCH) § 3703 (October 1, 1993).

Throughout Plaintiffs' employment duration with The Equitable, Bryan served as the agency manager of The Equitable's Memphis operation, and Dunham served as a management employee in The Equitable's Memphis office.

During Plaintiffs' employment with The Equitable, Plaintiffs allege that they were subjected to disparate terms, conditions and opportunities as a result of their gender and that they were subjected to sexual harassment. Plaintiffs further allege that they were constructively discharged on March 7, 1995. On February 28, 1996, Plaintiffs filed a complaint against Defendants in the Shelby County Chancery Court alleging violations of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*

**LAW**

The sole issue before this Court is as follows: whether the trial court erred in denying Defendants' motions to compel Plaintiffs to submit their claims for sexual harassment and sexual discrimination to arbitration.

In Gilmer v. Interstate/Johnson Lane Corp., 111 S.Ct. 1647 (1991), the United States Supreme Court addressed an issue similar to the one in the case at bar. The Plaintiff, Gilmer, a former registered securities representative, filed suit for discrimination

3

under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The sole issue presented for review in Gilmer was whether a claim under the ADEA could be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application. Defendant, Interstate/Johnson Lane Corporation ("Interstate"), hired Gilmer as the manager of its financial services department in May 1981. As required by Interstate, Gilmer registered as a securities representative with several stock exchanges, including the New York Stock Exchange ("NYSE"). Gilmer's registration application entitled "Uniform Application for Securities Industry Registration or Transfer" provided, *inter alia*, that Gilmer "agree[d] to arbitrate any dispute, claim or controversy" arising between him and Interstate "that is required to be arbitrated under the rules, constitutions or by-laws of the organizations with which I register." Gilmer, 111 S.Ct. at 1650. Rule 347 of the NYSE provided for the arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." Id. at 1650-51. In 1987, Interstate terminated Gilmer's employment. Gilmer was sixty-two years of age. After filing an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), Gilmer filed suit in the United States District Court for the Western District of North Carolina, alleging that Interstate had discharged him because of his age, in violation of the ADEA. Relying upon the arbitration agreement contained in Gilmer's registration application and upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*, Interstate filed a motion to compel arbitration of Gilmer's ADEA claim. The district court denied Interstate's motion to compel arbitration based upon Alexander v. Gardner-Denver Co., 94 S.Ct. 1011 (1974) and its progeny. In holding that the age discrimination claim was subject to compulsory arbitration pursuant to the arbitration agreement in Gilmer's securities registration application, the United States Supreme Court stated:

> It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. Indeed, in recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2). See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87

4

> L.Ed.2d 444 (1985); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In these cases we recognized that "by agreement to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi*, 473 U.S., at 628, 105 S.Ct., at 3354.

Gilmer, 111 S.Ct. at 1652.

In a strikingly similar case to the case *sub judice*, the United States Court of Appeals for the Sixth Circuit in Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir. 1991) addressed the issue of whether a registered securities representative's claims of sexual harassment and sexual discrimination against her brokerage firm were subject to arbitration pursuant to the securities registration form that she was required to execute in order to perform her work as an account executive. Plaintiff, Linda Willis ("Willis"), originally filed an action for sexual harassment, sexual discrimination, common law contract claims of outrage and breach of contract in state trial court. Defendant, Dean Witter Reynolds, Inc. ("Dean Witter"), removed the case to federal court and filed a motion to compel arbitration based upon Willis' execution of a Securities Registration Form U-4 and upon Willis' registration with various national securities exchanges, including the NYSE. The arbitration clause of the U-4 Form stated: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register." Id. at 306. Rule 347 of the NYSE Rules provided:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these Rules.

Id. Willis thereafter filed a motion for leave to amend her complaint to add a claim under Title VII. The district court subsequently granted Willis' motion to amend her complaint, granted Dean Witter's motion to compel arbitration on Willis' breach of contract claims, and denied Dean Witter's motion to compel arbitration as to Willis' sexual harassment, sexual

5

discrimination and Title VII claims. Id. In holding that the district court's denial of Dean Witter's motion to arbitrate Willis' discrimination claims was in error, the Sixth Circuit Court of Appeals relied largely upon the Supreme Court's decision in Gilmer and stated:

> The plaintiff's arguments which suggest that something inherent in Title VII precludes the enforcement of valid arbitration agreements in circumstances where the FAA is otherwise applicable was rejected in Gilmer. Further, while § 1 of the FAA excludes "contracts of employment" from the scope of the FAA, the Supreme Court has squarely held that arbitration agreements contained in a securities registration application such as the one at issue in this case do not constitute contracts for employment. Thus, § 1 of the FAA does not exempt Willis' discrimination claims from her agreement to arbitrate.

Id. at 312.

In the present case, Plaintiffs argue that Alexander v. Gardner-Denver Co., 94 S.Ct. 1011 (1974), and its progeny prohibit enforcement of the arbitration provisions contained within the contracts Plaintiffs executed regarding Plaintiffs' claims of sexual harassment and sexual discrimination. In Alexander, the Supreme Court addressed the issue of whether a union employee was foreclosed from pursuing an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., after he had been unsuccessful in an arbitration compelled by his collective bargaining agreement. In holding that the employee's statutory right to a trial de novo under Title VII is not foreclosed by prior submission of a claim to final arbitration under the nondiscrimination clause of a collective bargaining agreement, the Supreme Court stated that "[t]here is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." Alexander, 94 S.Ct. at 1019. In addressing Plaintiffs' argument that the Supreme Court's decision in Alexander prohibits the enforcement of the arbitration provisions contained within the contracts Plaintiffs executed regarding Plaintiffs' claims of sexual harassment and sexual discrimination, we note that the Supreme Court in Gilmer and the Sixth Circuit Court of Appeals in Willis addressed this same argument. The Supreme Court in Gilmer stated that the Alexander line of cases involved the issue of whether the arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims, not the enforceability of an agreement

6

to arbitrate statutory claims. In distinguishing the <u>Gilmer</u> case from the <u>Alexander</u> line of cases, the Supreme Court stated:

> First, [the <u>Alexander</u> line of cases] did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi*, 473 U.S., at 625, 105 S.Ct., at 3353. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

<u>Gilmer</u>, 111 S.Ct. at 1657. Similarly, the Sixth Circuit Court of Appeals in <u>Willis</u> cited the foregoing quotation from <u>Gilmer</u> and held that the Supreme Court's holding in <u>Alexander</u> was inapplicable to the facts in <u>Willis</u>. See <u>Willis</u>, 948 F.2d at 307-308.

Plaintiffs further argue that the contracts they executed are contracts of adhesion, ones which are dictated by employers in the field of securities sales and which are forced upon all persons seeking and obtaining employment in the securities field. The Supreme Court addressed a similar argument in <u>Gilmer</u> and stated that "[t]he unequal bargaining power between employers and employees is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." <u>Gilmer</u>, 111 S.Ct. at 1650. Here, as in <u>Gilmer</u>, there is no indication that Plaintiffs were coerced or defrauded into agreeing to the arbitration clause contained within the contracts they executed. We, therefore, find this argument of the Plaintiffs to be without merit.

In the instant case, the securities registration contracts that the Plaintiffs signed upon commencing their employment with The Equitable were the same contracts that the plaintiff in <u>Gilmer</u> and the plaintiff in <u>Willis</u> had signed. Because the Supreme Court in <u>Gilmer</u> held that Gilmer's age discrimination claim was subject to compulsory arbitration

7

pursuant to the arbitration agreement in the securities registration application that Gilmer had executed and because the Sixth Circuit Court of Appeals in <u>Willis</u> held that Willis' sexual harassment, sexual discrimination and Title VII claims were subject to arbitration pursuant to the arbitration agreement in the securities registration application that Willis had executed, we find that the Supreme Court's analysis and conclusions in <u>Gilmer</u> and the Sixth Circuit's reasoning in <u>Willis</u> compel the conclusion that the arbitration provisions contained within the contracts Plaintiffs executed apply equally to Plaintiffs' sexual harassment and sexual discrimination claims. Furthermore, the Tennessee Human Rights Act specifically provides that it embodies the policies of the Federal Civil Rights Act of 1964, 1968 and 1972. T.C.A. § 4-21-101 (a)(1). We, therefore, hold that the Plaintiffs' claims of sexual harassment and sexual discrimination shall be submitted to arbitration in accordance with the contracts signed by the Plaintiffs.

The judgment of the trial court is hereby reversed and this matter is remanded to the trial court for entry of an appropriate order. Costs on appeal are taxed to the Appellees for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

8